IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOA VAN HUYNH,                                    3:12-cv-02325-MA

              Plaintiff,              OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

         Defendant.


BRUCE W. BREWER
P.O. Box 421
West Linn, Oregon 97068

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

GERALD J. HILL
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant


1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Thoa Van Huynh, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and supplemental security income (SSI) disability benefits under Title XVI of the Act. See 42 U.S.C. §§ 401-434, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I affirm the final decision of the Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed the instant applications for DIB and SSI on May 6, 2010, alleging disability due to a "lower back injury," and a "replaced disc." Tr. 212. His applications were denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on August 10, 2011, at which Plaintiff was represented by counsel and testified. Vocational Expert (VE) C. Kay Wise was also present throughout the hearing and testified.

On November 17, 2011, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. After the Appeals Council declined review of the ALJ's decision, Plaintiff timely filed a complaint in this Court.

## FACTUAL BACKGROUND

Born on January 1, 1969, Plaintiff was 45 years old on the alleged onset date of disability and 52 years old on the date of the hearing. Plaintiff reported at separate times having completed eleventh and twelfth grade and has past relevant work as a Blackjack Dealer, Welder, Small Products Assembler, and Electronics Assembler. Tr. 17, 33, 213.

Plaintiff alleges his conditions became disabling on November 4, 2004. Tr. 182. Plaintiff testified about his limitations at the hearing and submitted an Adult Function Report and Pain and Fatigue Questionnaire. Tr. 31-48, 228-26. In addition, Plaintiff's sister, Jennifer Huynh, submitted a letter on Plaintiff's behalf. Tr. 248. Jane Wang, M.D., examined Plaintiff and submitted a Comprehensive Orthopedic Evaluation in relation to a prior application for disability. Tr. 254-58. Olga Senashova, M.D., examined Plaintiff and submitted an evaluative opinion. Tr. 357-64. Finally, John H. Ellison, M.D., examined Plaintiff and submitted an evaluative opinion. Tr. 436-46.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at

Steps One through Four. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform. <u>See</u> <u>Yuckert</u>, 482 U.S. at 141-42; <u>Tackett</u>, 180 F.3d at 1098.

At Step One, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, November 4, 2004. <u>See</u> 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*; Tr. 13.

At Step Two, the ALJ found Plaintiff's "residuals from lower back injury" and headaches were severe impairments. <u>See</u> 20 C.F.R. §§ 404.1520(c), 416.920(c); Tr. 13.

At Step Three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. <u>See</u> 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 13.

The ALJ found Plaintiff has the residual functional capacity (RFC) to perform a full range of light work, except that Plaintiff is further limited to lifting and carrying ten pounds frequently and twenty pounds occasionally; standing and walking in two-hour increments for a total of six hours in an eight-hour workday; sitting for two-hour increments for a total of six hours in an eight-hour workday; no climbing of ladders, ropes, and scaffolds; occasional stooping, kneeling, crouching and crawling; avoiding

work involving unprotected heights, dangerous machinery, and other hazards; and understanding, remembering, and carrying out simple and detailed, but not complex, tasks or instructions typical of occupations at SVP Level One or Two. Tr. 13-17.

At Step Four, the ALJ found Plaintiff is unable to perform his past relevant work as a Blackjack Dealer, Welder, and Electronics Assembler, but capable of performing his past relevant work as a Small Products Assembler. See 20 C.F.R. §§ 404.1565, 416.965; Tr. 17-18.

Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act.

### ISSUES ON REVIEW

Plaintiff raises three primary issues on review. First, Plaintiff argues the ALJ improperly rejected his subjective symptom testimony. Second, Plaintiff argues the ALJ improperly weighed the medical testimony by rejecting the opinions of Dr. Ellison and Dr. Senashova. Finally, Plaintiff argues the ALJ improperly rejected the lay testimony of Plaintiff's sister, Jennifer Huynh.[1]

---

[1] In his opening brief, Plaintiff briefly suggests the ALJ may have erred at Step Three of the sequential analysis. Plaintiff's passing reference to "arguabl[e]" Step Three error, however, does not specifically and distinctly present an assignment of error concerning the ALJ's Step Three analysis. Therefore, I decline to address Plaintiff's brief Step Three reference. See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1161 n.2 (2008); Boyer v. Colvin, No. 3:12-cv-00392-SI, 2013 WL 3333060, at *10 (D. Or. July 1, 2013).

## STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.   42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The Court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

I.   **Plaintiff's Testimony**

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis.   20 C.F.R. § 404.1529. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen, 80 F.3d at 1281-82. Second, absent

a finding of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so. Id. at 1281.

If an ALJ finds the claimant's testimony regarding her subjective symptoms unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify which testimony is credible and which testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, Plaintiff testified that he largely stays at home and seldom drives. Tr. 32-33. Plaintiff reported he can speak English, but cannot read or write because English is his second language. Tr. 33. Plaintiff testified that he becomes numb after sitting for fifteen to twenty minutes, and he takes narcotic pain medications to help relieve back pain. Tr. 36-37. As a result of the back pain, Plaintiff testified that he cannot lift heavy objects like two gallons of milk. Tr. 41. In addition, Plaintiff reported having persistent headaches that cause pain and

dizziness.    Tr. 38.    Although it was unclear whether these were related to his headaches, Plaintiff testified he has significant memory problems.    Tr. 39.

As to activities of daily living, Plaintiff testified that his sister does the shopping, cooking, cleaning, and laundry, and that he has a hard time reading because his vision is blurry.    Tr. 40, 42.    Plaintiff testified he did his own cooking, cleaning, and laundry before he had an automobile accident that eventually forced him to have back surgery.    Tr. 43.

In his Adult Function Report dated May 22, 2010, Plaintiff indicated that in a normal day he takes medicine, walks a little bit, and rests.    Tr. 228.    Plaintiff reported sleeplessness and headaches as a result of his medication regimen.    Tr. 229.    As to cooking, Plaintiff noted he prepares foods such as sandwiches and noodles on a daily basis, but that he cannot perform cooking tasks that take a long time.    Tr. 230.    Plaintiff reported that he does his own laundry on a weekly basis and goes with his friend to the store.    Tr. 230.    Plaintiff reported that he has no hobbies and does not have any interest in social activities.    Tr. 232.    As such, Plaintiff reported he "can't do anything beside take medicine all the time[]."    Tr. 232.

Plaintiff checked that his conditions affect his abilities to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, see, remember, complete tasks, concentrate, follow

8 - OPINION AND ORDER

instructions, and use his hands.  Tr. 233.  Plaintiff reported that
he cannot follow either written or spoken instructions and does not
get along with authority figures.  Tr. 233.

The ALJ rejected Plaintiff's testimony because there were
inconsistencies in Plaintiff's reported activities of daily living;
Plaintiff made inconsistent statements to medical providers and
demonstrated drug-seeking behavior; and there is a gap in the
medical record between 2008 and 2010, during the alleged period of
disability.  For the reasons that follow, I find these reasons,
taken together, constitute clear and convincing reasons to reject
Plaintiff's testimony.

The ALJ reasonably found that Plaintiff made inconsistent
statements about his activities of daily living.  At the hearing,
Plaintiff testified that he is unable to cook, clean, or do his own
laundry.[2]  Tr. 40, 42-43.  This was contradicted by his Function
Report, in which Plaintiff reported performing some limited cooking
and doing his laundry on a weekly basis.  Tr. 230.  In addition, on

_____

[2] Plaintiff asserts the ALJ mischarachterized his hearing
testimony because Plaintiff only testified that his sister
performs these activities, not that he *cannot* perform them.  This
argument is meritless.  Plaintiff testified that his sister does
the cooking, cleaning, and laundry, *and* that he did these
activities before his accident, strongly implying he can no
longer perform these activities.  Tr. 40, 42-43.  In addition,
Plaintiff's counsel flatly stated at the hearing that "[h]e is
unable to do such tasks as cooking, buying groceries, cleaning
around the house."  Tr. 29.  The ALJ reasonably interpreted
Plaintiff's testimony as asserting Plaintiff cannot cook, clean,
or shop for groceries.

July 26, 2010, Plaintiff reported to Dr. Senashova that he could cook and do light cleaning, but could not lift anymore. Tr. 358. The ALJ reasonably cited inconsistencies in Plaintiff's description of his capabilities in activities of daily living as a reason to discredit Plaintiff's testimony.

The ALJ also reasonably discredited Plaintiff's testimony on the basis that he made inconsistent statements to medical providers and demonstrated drug-seeking behavior. On October 25, 2010, after Plaintiff requested a prescription for Vicodin from an emergency room physician, the physician noted that Plaintiff's medical record contained "several contacts since [2000] with Kaiser in which patient says he just moved here. Also several requests for narcotic pain medication since 2000." Tr. 421. On June 28, 2006, Plaintiff's physician noted positive Waddell's signs and exaggerated pain behavior. Tr. 297. Similarly, on August 9, 2006, Plaintiff's physician noted that Plaintiff "seem[ed] to be drug seeking" and demonstrated "positive Waddell's signs and exaggerated pain behavior." Tr. 299. In November of 2006, Plaintiff's physical therapist noted that Plaintiff exhibited a "pain presentation" with wincing and closing eyes, moaning, constant change in position, and holding his back; and described Plaintiff as "hyper-reactive to light [palpation]" on his back. Tr. 304. In addition, Plaintiff's physician noted on June 18, 2008, that Plaintiff had been "getting narcotic[s] overseas from Vietnam."

Tr. 318. Thus, the ALJ's citation of inconsistent statements to medical providers and drug-seeking behavior is a compelling reason to reject Plaintiff's subjective symptom testimony.

Finally, the ALJ noted there was a significant gap in the medical record between 2008 and 2010, during the alleged period of disability. Although I do not find this determinative in the credibility analysis because the above reasons are sufficient, an unexplained failure to seek medical treatment is a proper basis on which to discredit a claimant's testimony of severe pain. Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). Therefore, the ALJ properly cited the two-year gap in the medical record during the alleged period of disabling back pain as an additional reason to reject Plaintiff's testimony.

In sum, I conclude the above reasons, taken together, constitute clear and convincing reasons to reject Plaintiff's testimony. The ALJ did not err in his consideration of Plaintiff's subjective symptom reports.

## II. **Medical Testimony**

Plaintiff next argues the ALJ erred in his consideration of the medical testimony by improperly rejecting the opinions of Drs. Ellison and Senashova. The Commissioner must provide clear and convincing reasons to reject the uncontradicted opinion of a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Where a physician's opinion is

11 - OPINION AND ORDER

contradicted by that of another physician, the ALJ may reject the physician's opinion by providing specific and legitimate reasons supported by substantial evidence in the record. Id. "'The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

"'Where . . . the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.'" Id. (quoting Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)). The ALJ is responsible for translating the claimant's medical conditions into functional limitations in the RFC. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). Ultimately, the RFC is sufficient if it is "consistent with restrictions identified in the medical testimony." Id.

**A.   Dr. Senashova**

On July 26, 2010, Dr. Senashova examined Plaintiff and submitted an evaluative opinion. Dr. Senashova noted Plaintiff was restless and unable to sit in the chair or on the examination table for more than five minutes at a time, walked with a limp favoring his left leg, and was able to go from the chair to the examination table while favoring his left leg. Tr. 357. After examination,

Dr. Senashova concluded Plaintiff could stand and walk for less than two hours, could sit for less than two hours, but had no lifting and carrying limitations. Tr. 361. Dr. Senashova further limited Plaintiff to frequent climbing, balancing, and stooping; and occasional kneeling, crouching, and crawling. Tr. 361-62. Notably, however, Dr. Senashova noted all of these findings were "subjective finding[s] based on claimant's report and appearance." Tr. 361-62.

Dr. Senashova's opinion was contradicted by Dr. Wang, who found Plaintiff could stand and walk for six hours in an eight-hour workday and had no restrictions on sitting. Tr. 257. Therefore, the ALJ was required to cite specific and legitimate reasons to reject Dr. Senashova's opinion. Lester, 81 F.3d at 830-31. The ALJ rejected Dr. Senashova's opinion because it was based on Plaintiff's discredited subjective symptom reporting. I conclude this is a specific and legitimate reason to reject Dr. Senashova's opinion.

As discussed above, the ALJ properly discredited Plaintiff's subjective testimony. Indeed, as Dr. Senashova noted three times, her opined limitations were based on Plaintiff's subjective reports. This reason for rejecting Dr. Senashova's opinion is especially significant considering multiple medical providers noted Plaintiff exhibited exaggerated pain behavior and drug-seeking

behavior.   Thus, I conclude the ALJ cited sufficient reasons for discrediting Dr. Senashova's opinion.

**B.   Dr. Ellison**

After an examination, Dr. Ellison limited Plaintiff to lifting and carrying up to ten pounds frequently and up to twenty pounds occasionally. Tr. 441.  Dr. Ellison opined Plaintiff could sit for six hours, stand for two hours, and walk for one hour in an eight-hour workday. Tr. 442.  Dr. Ellison noted that Plaintiff could sit for one hour, stand for 30 minutes, and walk for 15 minutes at a time.   Tr. 442.   Dr. Ellison also opined Plaintiff could only frequently reach, handle, finger, feel, push, and pull with his right hand and occasionally do so with his left hand.  Tr. 443.  In addition, Dr. Ellison found Plaintiff could only occasionally operate foot controls with the right foot and never with his left foot.  Tr. 443.  As to postural activities, Dr. Ellison opined Plaintiff could occasionally climb stairs or ramps but never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl.  Tr. 444.  Finally, Dr. Ellison noted Plaintiff could perform activities of daily living such as shopping and cooking.  Tr. 446.

Dr. Ellison's opined limitations were contradicted by the findings of both Drs. Senashova and Wang, as noted above.  Thus, the ALJ was required to cite specific and legitimate reasons to reject Dr. Ellison's opinion.  Lester, 81 F.3d at 830-31.  The ALJ rejected Dr. Ellison's opinion because it was unsupported by

14 - OPINION AND ORDER

objective evidence and relied on Plaintiff's unreliable self-reporting. Tr. 16-17. I conclude these are specific and legitimate reasons to reject the full extent of Dr. Ellison's opinion.

Indeed, imaging of Plaintiff's back, including imaging performed shortly before Dr. Ellison's examination, consistently revealed normal or mild findings notwithstanding the postoperative changes from Plaintiff's back surgery. Tr. 348-49, 435, 447. Moreover, despite finding significant reaching and handling limitations, Dr. Ellison's exam revealed normal range of motion in the shoulders, elbows, wrists, and fingers, and no neurologic or sensory deficits in the upper extremities. Tr. 438. Thus, the ALJ reasonably cited lack of objective evidence as a reason to discount Dr. Ellison's opinion of significant limitations.

The ALJ's citation to lack of objective support is particularly significant in light of the ALJ's second stated reason for rejecting Dr. Ellison's opinion; Plaintiff's subjective symptom testimony is unreliable. Indeed, Dr. Ellison's findings were based largely on Plaintiff's subjective reports of symptoms and pain. Even the examination techniques employed by Dr. Ellison, such as straight leg raising, the sensory exam, and range of motion tests, rely on Plaintiff's subjective self-report of pain. As discussed above, the ALJ properly discredited Plaintiff's self-reporting. Thus, the ALJ's citation to Dr. Ellison's reliance on Plaintiff's

self-reports in combination with the lack of objective evidence supporting the full extent of opined limitations constitute specific and legitimate reasons to discredit Dr. Ellison's opinion. The ALJ properly weighed the medical testimony.

### III. Lay Testimony

Plaintiff next asserts that the ALJ cited insufficient reasons to reject the testimony of Plaintiff's sister, Jennifer Huynh. Lay testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence that an ALJ must take into account. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). To discount lay witness testimony, the ALJ must give reasons that are germane to the witness. Id.

On August 1, 2011, Ms. Huynh submitted a letter reporting that Plaintiff's back problems prevent him from cooking, shopping, cleaning the bathroom, and changing sheets on his bed. Tr. 248. Ms. Huynh noted that Plaintiff can bathe, do laundry, and take medicine. Tr. 248. Finally, Ms. Huynh noted Plaintiff complains of severe back pain, losing sleep, memory problems, and lack of medicine to control his back pain. Tr. 248.

Although the ALJ purported to find Ms. Huynh's statements "credible to the extent they are based on personal observations," the ALJ ultimately rejected Ms. Huynh's lay testimony for the sole reason that "objective medical evidence does not support the alleged degree of limitation." Tr. 17. There is considerable

debate as to whether lack of objective medical evidentiary support can be properly cited as the sole reason for rejecting lay testimony.  Compare Glover v. Astrue, 835 F. Supp. 2d 1003 (D. Or. 2011), with Rivera v. Colvin, No. 6:12-cv-02132-MO, 2013 WL 6002445 (D. Or. Nov. 12, 2013).  I need not resolve this debate in this case, however, because the ALJ's bare citation to lack of supporting objective medical evidence without explanation is not a germane reason to reject Ms. Huynh's testimony.  In her letter, Ms. Huynh simply relayed Plaintiff's subjective pain complaints and listed her own observations about the daily activities Plaintiff is capable and incapable of performing.  Thus, the lack of supporting objective medical evidence bears little logical relationship to the validity of Ms. Huynh's opinion.  Accordingly, I find the ALJ erred in his treatment of the lay testimony.

An ALJ's failure to cite germane reasons to reject lay witness testimony, however, "is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'"  Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012) (quoting Buckner v. Astrue, 646 F.3d 549, 560 (8th Cir. 2011)) (brackets in original).  The ALJ's reasons for rejecting Plaintiff's testimony apply with equal force to the portion of Ms. Huynh's letter relaying Plaintiff's subjective complaints.  Moreover, as the ALJ cited with respect to Plaintiff's testimony, Ms. Huynh's description of Plaintiff's

functional capabilities in everyday activities is inconsistent with Plaintiff's reports to Dr. Senashova and in his Adult Function Report.  Compare Tr. 248 (Plaintiff cannot cook, clean the bathroom, or shop for groceries), with Tr. 229-31 (Plaintiff can do some cooking and can shop for groceries), and Tr. 358 (Plaintiff can cook and do light cleaning).  Thus, because "the same evidence that the ALJ referred to in discrediting [Plaintiff's] claims also discredits [Ms. Huynh's] claims," the ALJ's error in consideration of Ms. Huynh's testimony was harmless.  Molina, 674 F.3d at 1122.

### CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this __16__ day of April, 2014.


*Malcolm F Marsh*
Malcolm F. Marsh
United States District Judge